# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 10, 2024

Lyle W. Cayce
Clerk

—————————

No. 23-50369

—————————

Chloe Murphy,

*Plaintiff—Appellant*,

*versus*

Northside Independent School District,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:22-CV-123

_____

Before Jones, Dennis, and Douglas, *Circuit Judges*.

Per Curiam:[*]

Plaintiff Chloe Murphy sued Northside Independent School District for sex discrimination under Title IX of the Education Amendments of 1972, Pub. L. 92-318, 86 Stat. 373, 20 U.S.C. §§ 1681-88. She further claims the School District violated her constitutional right to due process. The basis of her lawsuit is severe and permanent injuries sustained after her cheerleading

---

[*] Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

coach forced the cheerleading team to complete 150-200 "frog jumps" after she was late to practice.[1] She developed rhabdomyolysis, a "serious syndrome due to direct or indirect muscle injury." She contends that her injuries were the result of the inequitable funding practices and inadequate training at the school. The district court dismissed her suit for failure to state a claim. We AFFIRM.

## I

An order granting a Rule 12(b)(6) motion to dismiss for failure to state a claim is reviewed de novo. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007).

## II

When a plaintiff alleges that a school has an official policy of intentional discrimination on the basis of sex, the "proper test" under Title IX is whether the school "intended to treat women differently on the basis of their sex." *Pederson v. La. State Univ.*, 213 F.3d 858, 882 (5th Cir. 2000).

The Plaintiff alleged no facts suggesting that the School District "intended to treat women differently on the basis of their sex." *See id.* The coach's punishment of the cheerleading team was not part of a "facially

---

[1] Murphy gives the following instructions on how to perform "frog jumps":

Sit in a deep squat position with your legs slightly wider than a shoulder-width apart. . . . Then on the exhale jump forward and up into the air, trying to leap as high as you can. While you are in the air, there should be triple extension – three joins [sic] (hips, knees, and ankles) are to be involved in the movement. Lightly land on your feet back to the starting position, inhale as you squat back.

discriminatory" policy at the school. *See Arceneaux v. Assumption Par. Sch. Bd.*, 733 F. App'x 175, 179 (5th Cir. 2018). Indeed, Murphy alleges that such punishment violated the School District's express policy. As stated in her Complaint, under School Board policies, neither "physical education staff[] nor any other school or community personnel . . . are permitted to use physical activity or physical education class or athletic practices as a form of punishment." Although she contends that the School District funds boys' and girls' sports differently, she fails to tie this allegedly inequitable funding to the harm she suffered at cheerleading practice in anything other than a speculative and conclusory manner. Consequently, the Plaintiff has failed to state a claim for intentional discrimination under Title IX.

The Plaintiff devotes a large portion of her brief to regulations promulgated by the Department of Education regulating college sports. *See* 34 C.F.R. § 106.41; Title IX of the Education Amendments of 1972; a Policy Interpretation; Title IX and Intercollegiate Athletics, 44 Fed. Reg. 71,413. Even if the cited regulations concern intentional discrimination rather than disparate impact discrimination, the Plaintiff's claim fails, because she has not alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974.

As for the Plaintiff's § 1983 claim, to hold the School District liable under that statute, she "must allege sufficient factual content to permit the reasonable inference (1) that a constitutional violation occurred and (2) that an 'official policy' attributable to the school district's policymakers (3) 'was the moving force' behind it." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622-23 (5th Cir. 2018) (citing *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854, 865-66 (5th Cir. 2012) (en banc)).

The Plaintiff's claim fails at step one of the municipal liability analysis, because she has not pleaded "that a constitutional violation occurred."

*Littell*, 894 F.3d at 623. The Plaintiff's argument is foreclosed by this court's binding precedent in *Moore v. Willis Independent School District*, 233 F.3d 871, 875 (5th Cir. 2000). In that case, a gym teacher who had observed a fourteen-year-old male student "talking to a classmate during roll call" ordered the student to do 100 "ups and downs" as punishment.[2] *Id*. at 873. In the following days, the student was diagnosed with rhabdomyolysis and renal failure. *Id*. This court stated that the Fifth Circuit has "held consistently that, as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporal punishment, whether it be against the school system, administrators, or the employee who is alleged to have inflicted the damage." *Id*. at 874. *Moore* controls this case. The imposition of exercise as punishment is not a constitutional violation. *See id*.

Because the Plaintiff has failed to plead either a Title IX or a constitutional cause of action, the judgment of the district court is AFFIRMED.

---

[2] The term "ups and downs" is defined as follows:

> To perform an up-down the student starts in the standing position, then squats until he can place his hands flat on the floor. When the hands have been placed on the floor the legs are then extended fully to the rear while the arms remain straight at the elbows with the torso elevated above the floor. The legs are then drawn back under the torso into a squatting position, and the exercise is completed by returning to a standing position.

*Moore*, 233 F.3d at 873 n.3.